THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW P. TAYLOR, Defendant-Appellant.

First District (4th Division) No. 61003

Opinion filed March 10, 1976.

Edwards, Haney, Singer & Stein, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael J. Goggin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant was tried before a jury which returned verdicts of guilty of murder, voluntary manslaughter, and attempt armed robbery. The trial judge, in an effort to correct the confusion manifest in verdicts of guilty of murder and of voluntary manslaughter, entered a judgment of not guilty as to the murder charge. He then entered judgments of conviction on the verdicts of guilty of voluntary manslaughter and attempt armed robbery and sentenced defendant to concurrent prison terms of 5 to 15 years for voluntary manslaughter and 3 to 9 years for attempt armed robbery. On appeal defendant contends: (1) the jury verdicts of guilty of murder, voluntary manslaughter, and attempt armed robbery are legally inconsistent; (2) the trial judge erred in refusing instructions on involuntary manslaughter.

Rodimar Ziac died in the early morning hours of October 26, 1973, as a result of a bullet wound to the arm and neck. Samuel Dux, Steve Seno, and defendant were all present at the time of the shooting. Dux and defendant testified at trial.

Dux testified that he, the deceased, and Steve Seno drove to Halsted Street and Belmont Avenue in Chicago, Illinois, on the night of October 25, 1973. They met defendant and Leo Willis and proceeded to the Cabrini Green housing project to purchase heroin. Defendant and Willis paid for half the heroin and all five went to Willis' apartment on Armitage Avenue for purposes of "shooting up" the heroin. Defendant asked for a ride back to Cabrini Green and Dux, Seno, and the decedent drove him. Seno sat in the front with the deceased who did the driving. Defendant and Dux sat in the back. Upon arrival at Cabrini Green, defendant exited through a back door of the four-door car and walked to the driver's window where the decedent was sitting. Defendant then put a pistol against the decedent's neck and asked for some money. The decedent laughed and defendant replied, "I ain't bullshitting, like I am for real." At that time Dux was lying on the back seat, felt the car jump, and heard a shot go off. He looked and saw blood flowing from the deceased's neck. Dux then hailed a taxicab and police squad car which took them to the hospital where he last saw the decedent being taken into the emergency room.

Defendant's statement to the police and his testimony at trial admitted to having left Willis' apartment with the decedent, Dux, and another man. Defendant claimed to have argued with the decedent in an effort to obtain more heroin. Defendant admitted to having pulled out his pistol and to having reached for money in the deceased's shirt pocket, but he claimed that the decedent and Dux had supplied him

with heroin and he wanted more credit. The gun went off when Dux grabbed him and "tussled" with him.

Two doctors, one a clinical psychologist, the other a psychiatrist, testified for the defense that defendant suffered from latent schizophrenia. Neither, however, believed that it was necessary to have defendant committed.

In rebuttal two psychiatrists testified that they examined defendant and in their opinions he suffered no mental disease or defect on the night of the homicide.

■■ Defendant contends that the trial court erred in entering judgments on the verdicts of guilty of voluntary manslaughter and of attempt armed robbery. Defendant reasons that the "sudden and intense passion resulting from serious provocation by Rodimar Ziac" negated the specific intent offense of attempt armed robbery.

Our supreme court has found no legal inconsistency "in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts." (*People v. Hairston* (1970), 46 Ill. 2d 348, 362, 263 N.E.2d 840, 849.) Juries need not return logically consistent verdicts so long as their verdicts are not legally inconsistent. (*People v. Garnett* (1969), 113 Ill. App. 2d 159, 251 N.E.2d 761.) *Garnett* further found no logical inconsistency where the jury could have believed beyond a reasonable doubt that the defendant participated in the armed robbery attempt but had reservations about his actually stabbing the deceased.

■■ The jury in the case before us returned verdicts of guilty of murder, of voluntary manslaughter, and of attempt armed robbery. The trial judge entered judgments of not guilty of murder and guilty of voluntary manslaughter and of attempt armed robbery. The jury could very well have believed beyond a reasonable doubt that defendant, holding a gun, attempted unsuccessfully to take money from the deceased's shirt pocket. They could further believe that defendant was provoked by the decedent who helped him obtain heroin and then refused him credit, that defendant then shot the decedent while demanding money from him for the heroin. The crimes charged in the instant case are composed of different elements though they arise out of the same set of facts. We find no legal inconsistency in the judgments before us. If any confusion existed as to the verdicts of guilty of murder and of voluntary manslaughter, that confusion was corrected by the trial judge.

■■ Defendant urges us to reverse on the grounds that the trial judge refused to give the jury his tendered instruction on involuntary manslaughter. When the record reveals evidence which, if believed by

the jury, would reduce the crime of murder to the lesser included offense of manslaughter, the jury should receive an instruction defining manslaughter. (*People v. Canada* (1962), 26 Ill. 2d 491, 187 N.E.2d 243; *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389.) Decedent in the *Canada* case died from a stab wound in the thigh incurred when he was about to kick defendant. Evidence did not reveal whether or not decedent was armed at the time of the fight. In the *Bembroy* case the decedent, defendant and witnesses to the shooting had been drinking alcoholic beverages throughout the night. Defendant left a loaded gun lying in a chair during this evening of drinking and later carried the gun with his finger on the trigger. The court found that the jury could have believed defendant's conduct to amount to "recklessness" within the statutory definition. Should there be no evidence in the record to support a manslaughter conviction, instructions on manslaughter are improper. *People v. Goodpaster* (1966), 35 Ill. 2d 478, 221 N.E.2d 251.

Defendant in the instant case tendered an instruction which read: "A person commits the crime of involuntary manslaughter who causes the death of another by acts which are performed wrecklessly [sic] and are likely to cause death or great bodily harm to another." (IPI Criminal, No. 7.07.) This instruction was refused by the trial court. Defendant testified that he was high on dope after spending about two hours in Willis' apartment. He claimed that the gun went off when Dux grabbed him and "tussled" with him. Defendant, however, clearly remembered the details of the night of October 25, 1973, and the morning of October 26, 1973. No testimony other than defendant's claim that he was high on drugs indicated that defendant may have been intoxicated at the time of the shooting. Defendant testified that he saw no weapons other than the gun he pointed at the decedent and that he reached for money in decedent's pocket. We see no evidence in the record which would allow the jury to find defendant to have been intoxicated or his conduct to have been reckless at the time of the shooting. The trial court correctly refused defendant's tendered instruction on involuntary manslaughter.

For the foregoing reasons, this court concludes that the judgment of the Circuit Court of Cook County must be affirmed.

Judgment affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.