THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MABRY GOODWIN, Defendant-Appellant.

Fifth District    No. 80-207

Opinion filed July 29, 1981.

Robert H. Rice, of Belleville, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Mabry Goodwin appeals from the judgment of the Circuit Court of Randolph County convicting him of the voluntary manslaughter of his wife, Catherine Goodwin. Defendant had been charged with the murder of his wife and Dr. Richard Bryant. The two murder charges arose from the same incident and were consolidated for

trial. The jury failed to reach a verdict concerning the killing of Dr. Bryant and found defendant guilty of the voluntary manslaughter of his wife. The court sentenced defendant to seven years' imprisonment and a fine of $2,500.

At trial, the sheriff of Randolph County testified for the State that he received a telephone call from defendant on November 23, 1979. Defendant explained that he had just shot his wife and a man. The sheriff went to the Goodwin home.

Deputy sheriff Joseph Hall accompanied the sheriff. Hall testified that he entered the house and found the bodies of Catherine Goodwin and Richard Bryant on the dining room floor. The defendant was cooperative and gave an oral statement concerning the killings, which Hall summarized in his testimony. Gary Ashman, an agent for the Illinois Division of Criminal Investigation, testified to the contents of a more detailed written statement given by defendant later the same day.

Defendant's account was as follows: He was working in a shed near his house. Dr. Bryant drove up and entered the house. Shortly afterward, defendant entered the house. He saw his wife backed up against a table with her pants down around one leg. Bryant's pants were on the floor. Defendant asked what was going on. His wife told Bryant to shoot the defendant. Bryant picked up an automatic pistol from a shelf and attempted to shoot the defendant. The gun snapped but did not fire. Defendant grabbed a revolver from a drawer. In an attempt to remove Mrs. Goodwin from between himself and Bryant, defendant hit her twice on the head and finally shot her. He then shot Bryant.

Among the other State's witnesses was Monsignor Gregory Holtgrave. He testified to knowing Catherine Goodwin as a parishioner since 1973 and to her regular church attendance. Over defense objection, he testified that, although his contacts with Mrs. Goodwin were limited, to his knowledge her reputation for morality was good.

The State also presented evidence that the pistol found in Bryant's hand was in working order and had six bullets in the magazine.

Defendant's testimony was consistent with the account he had given the officers, although more detailed. He stated that, after his wife told Bryant to shoot him, she jumped in front of Bryant and faced the defendant. Bryant reached around her and continued to "snap" the pistol at the defendant. Defendant stated that this wife "fought" with him when he tried to get her out of the way. He struck her twice on the head with his revolver in an unsuccessful attempt to knock her down. When asked how close she was to Bryant at this time, defendant answered that he was unable to see Bryant at this time. He stated that he finally had to shoot his wife, not with the intent to kill her, but to expose Bryant, who he then shot.

At the instruction conference, the State tendered and the court accepted a murder issues instruction stating that in order to sustain the charge of the murder of Dr. Bryant, the State was required to prove that the defendant was not justified in using the force which he used. (Illinois Pattern Jury Instructions, Criminal, No. 25.05 (1968) (hereinafter IPI).) However, the murder issues instruction as to Catherine Goodwin tendered by the State and accepted by the court did not incorporate the element of self-defense. IPI Criminal No. 7.02.

Defense counsel objected to the latter instruction. He contended that an issue of self-defense in the killing of Catherine Goodwin was presented by the defendant's testimony that Catherine Goodwin had used her own body to shield Bryant while telling Bryant to shoot the defendant.

The court found that the evidence did not support the defendant's theory. The court commented that defendant's claim that he had to shoot his wife to get her out of the way was purely conclusory in light of his testimony that he was able to reach her and strike her on the head twice before he shot her, and that he weighed 180 pounds while she weighed 145 pounds.

As it had with respect to Bryant, the court accepted a voluntary manslaughter instruction pertaining to Catherine Goodwin requiring proof that the defendant intentionally or knowingly performed acts which caused the death of Catherine Goodwin, that when the defendant did so he believed that circumstances existed which would have justified killing Catherine Goodwin, and that the defendant's belief that such circumstances existed was unreasonable. IPI Criminal No. 7.06.

In the prosecutor's final argument to the jury, several of his remarks were objected to by the defense. The prosecutor said, "You are the taxpayers of this county and pay my salary." He said, "I wouldn't ask you to convict a man that is not guilty." His last comment was, "I am asking you to do justice in this case. What value is there to bring a murderer to justice? It is hard to determine that. That is as hard as to determine the value of a fatherless child." The court sustained the defendant's objections and instructed the jury to disregard these statements.

The first issue presented by defendant concerns the testimony of Monsignor Holtgrave regarding the character of Catherine Goodwin. Monsignor Gregory Holtgrave, a Catholic priest, was called by the State to testify to Catherine Goodwin's reputation for good moral character. The Monsignor stated that he had known Catherine Goodwin as her pastor since about 1973. He testified that she was a regular churchgoer but that he had lost track of her over the last year. He also stated that to his knowledge Mrs. Goodwin's reputation was good, although his contacts with her were limited.

It is the defendant's position that the State's questioning of Monsignor

Holtgrave regarding the character of Catherine Goodwin was improper on two grounds: that Mrs. Goodwin's character was not put in issue and thus not a proper subject of the State's case in chief, and that the State's questioning called for an opinion of her character.

■■ It is well recognized that evidence showing the character or reputation of the deceased cannot be given by the State in a prosecution for homicide in the first instance as part of its case in chief. For example, the prosecution may put on reputation evidence to prove the victim's peaceful character only if the defendant has first attacked the victim's character for peaceableness. (*Kelly v. People* (1907), 229 Ill. 81, 82 N.E. 198.) The State contends that defendant's account of apparent sexual misconduct between his wife and Richard Bryant necessarily put Mrs. Goodwin's character in issue, and that proof of Mrs. Goodwin's good character was proper as part of the State's attempt to demonstrate the implausibility of defendant's account. We do not accept this contention.

The State relies on *People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824, which held that proof of a rape victim's reputation for chastity may be proper during the State's case in chief. However, this conclusion was grounded on the materiality of prior chastity as bearing on lack of consent in a rape prosecution, and *Stephens* commented that even in rape cases, introduction of character evidence during the State's case in chief should be viewed with considerable caution.

In a homicide prosecution, proof of the deceased's general good character does not directly relate to any element of proof, unlike proof of prior chastity where consent is at issue in a rape prosecution. Evidence of the deceased's general reputation for chastity in a murder case was held improper where it would have allowed the jury to conclude that she was a virtuous woman despoiled and driven to suicide by the defendant, contrary to the defendant's account of their liaison. (*Burnett v. People* (1903), 204 Ill. 208, 68 N.E. 505.) *Burnett* concluded that the deceased's chastity was not placed in issue by the evidence of her affair with the defendant. The admission of Monsignor Holtgrave's testimony concerning Mrs. Goodwin's general reputation for morality was similarly erroneous.

■■ Although we disagree with the State's theory, we do not believe that the trial court committed reversible error in admitting the testimony of Monsignor Holtgrave. The Monsignor's testimony, at most, had a marginal impact upon the jury. Monsignor Holtgrave, by his own account, admitted that his contacts with Catherine Goodwin had been limited. The trial court took notice of this and stated that the Monsignor's testimony was uncertain and not very convincing. Furthermore, evidence of the deceased's reputation for morality generally has little bearing, where the defendant's claim was one of self-defense.

■■ ■ The second part of defendant's challenge to the admission of

Monsignor Holtgrave's testimony is that it was based on opinion. In Illinois, a witness is not allowed to give a personal assessment of another's character. (*People v. Greeley* (1958), 14 Ill. 2d 428, 152 N.E.2d 825; *People v. Wendt* (1969), 104 Ill. App. 2d 192, 244 N.E.2d 384.) In the present case, Monsignor Holtgrave specifically addressed Catherine Goodwin's reputation by stating that to his knowledge her reputation was good. His statement was not a personal opinion so much as an indication that he was not particularly familiar with her reputation. In light of the aforementioned factors, we cannot say that Monsignor Holtgrave's testimony denied defendant a fair trial.

Defendant also maintains that the court erred in refusing to incorporate the element of self-defense into the murder instruction pertaining to the killing of Catherine Goodwin. Specifically, defendant points out that only slight evidence of self-defense is required to support instructing the jury on this issue. Defendant argues that a question of whether Catherine Goodwin was an aggressor under the statute defining justifiable use of force (Ill. Rev. Stat. 1979, ch. 38, par. 7—1) was raised by his testimony that she told Dr. Bryant to shoot the defendant and proceeded to shield Bryant as he attempted to carry out her instructions.

The State correctly asserts that a defendant's conviction of manslaughter by the trier of fact constitutes an acquittal of murder. (*People v. Carrico* (1923), 310 Ill. 543, 142 N.E. 164; *People v. McCutcheon* (1977), 68 Ill. 2d 101, 368 N.E.2d 886.) In returning a guilty verdict under the voluntary manslaughter instruction here, the jury necessarily found that while the defendant believed that circumstances justified the use of force against Catherine Goodwin, his belief was unreasonable or the force used was excessive. Therefore, we need not decide the question of whether it was error to refuse to incorporate the question of self-defense in the murder instruction.

■■ Finally, defendant contends the prosecutor's closing remarks set forth above necessitated the granting of a mistrial. The State concedes that the latter two remarks were improper, but maintains that they do not amount to reversible error. While we do not condone admittedly improper argument of the type involved here, we must agree that the remarks cannot be said to have aroused the passion or prejudice of the jury where they were brief, the defense objections were immediately sustained, and the jury was instructed to disregard.

The judgment of the Circuit Court of Randolph County is affirmed.

Affirmed.

KASSERMAN, P. J., and WELCH, J., concur.