(No. 56940.— )

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PATRICK FAUSZ, Appellee.

*Opinion filed March 25, 1983.—Rehearing denied May 27, 1983.*

Tyrone C. Fahner and Neil F. Hartigan, Attorneys General, of Springfield, and Alan E. Stumpf, State's Attorney, of Waterloo (Stephen E. Norris, and Raymond F. Buckley, Jr., of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Goldenhersh and Goldenhersh, P.C., of Belleville (Marvin W. Goldenhersh, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Patrick Fausz, was charged by information with the murder of Michael Lux and the attempted murder of James D. Weber. A jury in the circuit court of Monroe County found defendant not guilty of the offenses of murder, attempted murder and involuntary manslaughter, but convicted him of the offense of voluntary manslaughter. The trial court entered a judgment of guilty of voluntary manslaughter and sentenced defendant to a three-year prison term. The appellate court reversed, finding the evidence failed to establish the defendant's guilt of voluntary manslaughter. (107 Ill. App. 3d 558.) The appellate court also refused to reduce the degree of the offense to involuntary manslaughter under Supreme Court Rule 615(b)(3) (73 Ill. 2d R. 615(b)(3)) because the jury had specifically acquitted defendant of that offense. We allowed the State leave to

appeal.

The State contends that the appellate court erred by reversing defendant's conviction of voluntary manslaughter.

Early in the evening of September 3, 1980, Lux, Weber, and Rodney Godier commenced drinking. At approximately 10:30 p.m., they arrived at a tavern owned and operated by defendant and continued drinking. They overheard defendant tell a patron, Joe Benton, that he was placing two bottles of whiskey, which he had previously borrowed, in Benton's pickup truck. One of the three allegedly "teased" defendant, suggesting he put the whiskey in Weber's car instead of Benton's truck.

Around midnight the three men left the tavern but loitered in the parking lot. Defendant became suspicious and watched them from the door. A tavern patron went out to the parking lot and positioned himself behind Benton's pickup truck. At one point, Weber approached the truck, but the patron confronted him and Weber walked away.

The trio then got into Weber's car, backed down the road about 200-300 feet north of the tavern, parked and smoked marijuana for about a half hour. Afterward, Weber drove slowly past the tavern with the lights off and parked in the road just south of the tavern. Weber and Lux then got out of the car and relieved themselves.

At this point, there is some conflict in the testimony. Weber testified defendant came out of the tavern with a pistol, told him and Lux to leave the tavern premises and not return, and then fired four shots. Upon reaching the car, Lux got in holding his back, and started bleeding from his mouth. Weber then sped off. After driving a few miles, Weber saw a pursuing vehicle in his rear-view mirror and as it approached his car, he heard five or six shots fired. Subsequently, Weber drove Lux to a hospital, where Lux was pronounced dead. An autopsy revealed

Lux' death resulted from a gunshot wound in the back.

Defendant testified that he became suspicious when he saw Weber's car drive slowly past the tavern with the lights off and then stop in the middle of the road. He obtained a pistol, kept on the premises for protection, and went out behind his automobile in the parking lot. He observed Weber approach Benton's truck and told Weber that all of them should leave and not come back. Weber moved toward defendant but stopped when defendant advised him he had a gun. Weber walked back to his car and defendant went back into the tavern.

Shortly thereafter, defendant observed Lux near Benton's truck. He again got his gun and went out to confront Lux. Lux ran toward Weber's car parked in the road. Defendant, thinking Lux had taken the whiskey bottles, told Lux to stop. Lux kept running. Defendant fired a shot into the air and then, in order to scare Lux into stopping, aimed his pistol over Lux' head and fired a second shot. He then watched Weber's car speed off.

Defendant and another tavern patron, Joe Falkner, pursued them in Falkner's car. When they drew near to Weber's car, defendant fired another shot in the direction of Weber's car. It struck the left front fender. Shortly thereafter, Falkner and defendant ceased their pursuit.

At trial, the deputy who arrested defendant testified defendant appeared shocked and surprised that anyone had been hurt during the incident. Defendant testified he fired the pistol only to scare Lux and the others in order to get them to stop. He stated he had no intention of hurting anyone and that he never thought he had a right to shoot any of the three individuals. He maintained the shooting of Lux was accidental.

During the conference on jury instructions, the State tendered a voluntary-manslaughter instruction. Defendant objected, contending there was no evidence suggest-

ing the defendant thought he was justified in killing the victim. In response, the State argued that there was testimony that defendant fired his pistol to protect the two bottles of whiskey in Benton's truck and that this was sufficient provocation to warrant a voluntary-manslaughter instruction. The trial court granted the State's request and allowed a voluntary-manslaughter instruction.

A person commits voluntary manslaughter if he kills an individual without lawful justification under a sudden and intense passion resulting from serious provocation, or if he intentionally or knowingly kills an individual believing the circumstances justify or exonerate the killing, but his belief is unreasonable. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2.) "The only categories of serious provocation which have been recognized are: 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; *but not mere words or gestures or trespass to property.*' [Citations.]" (Emphasis added.) (*People v. Crews* (1967), 38 Ill. 2d 331, 335-36. See *People v. Free* (1976), 37 Ill. App. 3d 1050.) The appellate court in the instant case found no evidence of "heat of passion" or "unreasonable belief" to support a voluntary-manslaughter conviction.

The State asserts voluntary manslaughter is an included offense of murder, the only difference being that it requires a less culpable mental state than murder. It contends the evidence in the instant case would have supported a murder verdict. Consequently, the State argues, where the evidence establishes defendant committed murder, it necessarily establishes defendant committed the included offense of voluntary manslaughter. Essentially, the State's position is that a defendant charged with murder may be convicted of the included offense of voluntary manslaughter as long as there is evidence to support a murder conviction even though the evidence fails to establish either of the mental states of

voluntary manslaughter. The State relies on *People v. Pierce* (1972), 52 Ill. 2d 7, and *People v. Crawford* (1944), 387 Ill. 616.

Neither *Pierce* nor *Crawford* supports the State's position. Indeed they support the opposite. Both define voluntary manslaughter as a lesser included offense of the charge of murder, but both require proof of the elements of voluntary manslaughter. In *Crawford,* this court said that "under an indictment for murder, where a homicide is proved but proof of the requisite element of malice is lacking, a conviction for manslaughter is proper, *if justified by the evidence.*" (Emphasis added.) *People v. Crawford* (1944), 387 Ill. 616, 620.

In *Pierce,* the defendant was indicted for murder but was convicted of voluntary manslaughter. Defendant argued the jury should not have been given instructions on voluntary manslaughter. This court affirmed the conviction, but only after finding "there was ample evidence presented to the jury from which they might conclude that defendant's actions resulted from an intense passion." *People v. Pierce* (1972), 52 Ill. 2d 7, 11.

In the instant case, in reversing defendant's conviction, the appellate court relied on *People v. Newman* (1935), 360 Ill. 226, 231-32, where it was said:

"This court has often announced the rule that where the evidence is such that it admits of but one of two conclusions, either that the defendant is guilty of murder or is innocent, the giving of an instruction and form of verdict on manslaughter is improper, and where given at the request of the People amounts to error requiring a reversal of the judgment if the accused be found guilty of the lesser crime. [Citations.]"

The record does not disclose any evidence which would establish defendant acted in the "heat of passion" or that he believed the killing was justified but his belief was unreasonable. The State does not point to any evidence to support the voluntary-manslaughter conviction; instead it

argues such evidence is not necessary. We disagree. What was said in *People v. Thompson* (1973), 11 Ill. App. 3d 752, 756, is applicable here: "In a murder trial, a defendant may properly be found guilty of the lesser offense of voluntary manslaughter, but only if the evidence adduced at trial establishes the necessary elements of that offense." (See *People v. Towers* (1974), 17 Ill. App. 3d 467; *People v. Smith* (1973), 16 Ill. App. 3d 553; *People v. Clark* (1973), 15 Ill. App. 3d 756.) We hold the reversal of defendant's voluntary-manslaughter conviction was proper.

The State requests that if the voluntary-manslaughter conviction is not upheld, it should be allowed to prosecute the defendant again for murder. Alternatively, the State asks that we reduce the degree of the offense to involuntary manslaughter under Supreme Court Rule 615(b)(3) (73 Ill. 2d R. 615(b)(3)). As previously stated, the jury found the defendant not guilty of murder and involuntary manslaughter. See Ill. Const. 1970, art. I, sec. 10.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.