THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD HOFFER, Defendant-Appellant.

Second District No. 82—888

Opinion filed February 22, 1984.

Randy K. Johnson, of Elgin, and John S. Biallis, of St. Charles, for appellant.

Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

JUSTICE HOPF delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County verdicts were returned finding defendant guilty of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)), voluntary manslaughter (unreasonable belief) (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(b)), and involuntary man-

slaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)), all in connection with the shooting death of Harold E. Peters. The trial court entered judgment on each of the verdicts, and defendant thereafter filed his timely post-trial motion asserting that the verdicts were inconsistent because of the different mental states involved in each offense. The trial court subsequently denied the motion, vacated the convictions for voluntary manslaughter and involuntary manslaughter, and retained the judgment for the conviction of murder, sentencing defendant to 20 years' imprisonment.

Defendant appeals, contending that his constitutional rights to be free of double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10) were violated when the court entered a judgment and sentenced him upon a charge of which he was impliedly acquitted. On this basis, he seeks to have the murder conviction vacated and the involuntary manslaughter conviction reinstated. We will consider this issue as well as a related one which we perceive to be even more troublesome; *i.e.*, whether the jury verdicts were inconsistent so as to require reduction of defendant's offense or reversal of his conviction.

Harold Peters, referred to at trial as "Ed," had been romantically involved with defendant's sister, Catherine Einsiedel, and was the father of Einsiedel's daughter, Shannon. Einsiedel had lived with Peters intermittently over the course of their three-year relationship, removing herself to defendant's home when she and Peters fought. At the time of the homicide, Einsiedel had left Peters, and she and Shannon had been staying with defendant for three or four months. However, Einsiedel continued to maintain some relationship with Peters.

On the evening of May 18, 1982, Einsiedel received a visit from Tony Charbauski. While Charbauski and Einsiedel were upstairs in her bedroom, Peters came into the house, admitting himself through a window.. Peters went upstairs, and upon finding Einsiedel and Charbauski, became agitated and tried to get Charbauski to fight. As Charbauski was leaving the house, Peters threatened and attempted to kick him. When Peters came back inside the house, Einsiedel informed him that she wanted to end their relationship. As Peters left, he broke the dust cover of defendant's stereo, told Einsiedel he would pay for the damage, and gave her some money.

Defendant returned home approximately one-half hour later. Defendant and Peters were close friends, and defendant was aware of the relationship and problems between Einsiedel and Peters. Defendant knew Peters possessed guns, was skilled in the use of firearms, and previously threatened or spoke of threatening people, including defendant, with guns. Defendant testified that Peters was much more

violent when he had been drinking. When defendant arrived home on the night in question, Einsiedel told him of the incident with Peters. Defendant indicated that he was sick of such behavior by Peters. Peters had been calling or coming to the house two or three times per week, usually in an intoxicated state, in the middle of the night.

Defendant testified that he went to bed and had started to fall asleep when he heard Peters' truck pull up. Defendant got up, feeling that he should be prepared if Peters attempted to break in, and told Einsiedel that Peters was there. Defendant, who testified that he was afraid for himself, Einsiedel, and Shannon, got his shotgun and went downstairs. When he opened the door, defendant found Peters outside, leaning against the porch rail. Peters was wearing only a tucked-in T-shirt and jeans, and was standing about five feet from defendant. After a brief conversation with defendant about the dust cover, Peters asked to talk to Einsiedel. According to defendant, Einsiedel, who had followed defendant downstairs, indicated that she did not want to speak with Peters, and defendant told Peters to leave. Peters, who defendant thought was intoxicated, became angry. Peters turned around and started walking down the steps, putting his hands up in the air, and making some remark about defendant shooting him. What occurred next is in conflict.

Einsiedel testified that as Peters turned around, she yelled at her brother not to shoot, the shotgun then went off and Peters fell to the ground. When asked what was the position of the gun as defendant shot Peters, the witness indicated it was in an "aim" position. According to Einsiedel, Peters had only a cigarette in his hand at the time, and his arms were raised up in the air. She testified that Peters fell about five feet from where he was originally standing on the porch. Einsiedel ran over to Peters; she did not see any weapons on or near him. Peters was pronounced dead by paramedics who arrived on the scene shortly thereafter. On cross-examination, Einsiedel stated she could not see Peters for a few seconds just prior to the shooting because she was looking at her brother and the gun. She stated for the month preceding the shooting Peters had carried a pocket knife in a holster on his belt.

Defendant testified that as Peters began walking down the porch steps, defendant got worried and removed the safety device from the shotgun. Immediately before the shot was fired, defendant heard his sister say, "Don." Defendant started to turn towards her and she said, "Don't shoot!" Defendant turned and looked back at Peters and saw him lower his hands and begin to turn around, a movement which made defendant think that Peters was going to get a gun. Defendant

testified that at that time the shotgun was leaning against his shoulder and was pointing straight up into the air. Upon seeing Peters' movement, defendant lowered the shotgun and began to pull it to his shoulder, at which time the gun discharged. Defendant stated he did not aim the gun. He stated that before the gun went off, Peters was facing him. An autopsy revealed that Peters had been shot once in the back.

The jury was instructed on murder, voluntary manslaughter, and involuntary manslaughter. The issues instructions on voluntary manslaughter required the jury to find that defendant believed, albeit unreasonably, that circumstances existed which justified his use of force. (Illinois Pattern Jury Instruction (IPI), Criminal, No. 27.01 (2d ed. 1981).) The issue of defendant's belief was also submitted as part of the issues instruction for murder and required the jury to find that defendant did not believe justifying circumstances existed. (IPI Criminal No. 27.01 (1968).) Finally, the jury was instructed that by definition the offense of involuntary manslaughter was an unintentional one, although a lack of intent was not included as an issue in the issues instruction on that offense. (IPI Criminal Nos. 7.07, 7.08 (2d ed. 1981); Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) Guilty verdicts were returned on each of these charges, and defendant was sentenced only upon the greater offense of murder. The convictions for voluntary manslaughter and involuntary manslaughter were vacated.

Because of the constitutional ban against double jeopardy (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 10), multiple prosecutions or punishments for the same offense are barred. (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a); *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260.) As a corollary to this principle, the Criminal Code of 1961 provides that "[a] conviction of an included offense is an acquittal of the offense charged." (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a).) It is well established that voluntary manslaughter and involuntary manslaughter are lesser included offenses of murder (*People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78; *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409; *People v. Cowen* (1979), 68 Ill. App. 3d 437, 386 N.E.2d 435), and involuntary manslaughter is a lesser included offense of voluntary manslaughter. (*People v. Towers* (1974), 17 Ill. App. 3d 467, 308 N.E.2d 223.) Defendant therefore contends that his conviction of involuntary manslaughter operated as an acquittal of the charges of murder and voluntary manslaughter and that convicting and sentencing defendant for murder violated his constitutional right to be free from double jeopardy. We disagree.

This identical argument was considered and rejected by the court in *People v. Kettler* (1983), 112 Ill. App. 3d 1061, 1067, 446 N.E.2d 550. Noting that a jury may, and frequently does, return guilty verdicts upon both the charged offense and its lesser included offense (see *People ex rel. Carey v. Scotillo* (1981), 84 Ill. 2d 170, 417 N.E.2d 1356; *People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329; *People v. Burnette* (1981), 97 Ill. App. 3d 1015, 423 N.E.2d 1193), the court concluded that section 3—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a)) applies only to those instances where the jury returns a verdict upon the lesser offense and is silent as to the charged offense. (*People v. Kettler* (1983), 112 Ill. App. 3d 1061, 1067, 446 N.E.2d 550; see also *People v. Keith* (1978), 66 Ill. App. 3d 93, 383 N.E.2d 655; *People v. Roberts* (1976), 36 Ill. App. 3d 811, 345 N.E.2d 132.) In this situation, the jury's silence on the greater offense will be deemed an "implied acquittal" of that offense. *Green v. United States* (1957), 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221.

■ We agree with the reasoning of the *Kettler* decision and accordingly find no "implied acquittal" of either murder or voluntary manslaughter in the instant case. Here, the jury was not silent on either of these offenses but, to the contrary, returned a specific finding of guilt on each of them. Under these circumstances, "the doctrine of 'implied acquittal' would be literally fictional." *People v. Kettler* (1983), 112 Ill. App. 3d 1061, 1067, 446 N.E.2d 550; see also *People v. Krogul* (1983), 115 Ill. App. 3d 734, 737, 450 N.E.2d 20.

We reach this conclusion mindful of several recent cases which at first glance appear to support defendant's position that the "implied acquittal" doctrine applies here. We find those cases distinguishable. In *People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593, the jury was instructed on both murder and unreasonable belief voluntary manslaughter. The issues instruction for voluntary manslaughter required the jury to find that defendant believed circumstances existed which justified his actions. The issues instruction for murder, however, omitted the element required under these circumstances, that defendant did not believe justifying circumstances existed. (*Stuller*; see also *People v. Vega* (1982), 107 Ill. App. 3d 289, 437 N.E.2d 919.) The jury returned verdicts of guilty on both the murder and voluntary manslaughter charges. The trial judge vacated the voluntary manslaughter verdict and entered judgment on the murder conviction. On appeal, the murder conviction was reversed and the cause remanded to the circuit court with instructions to enter a finding of guilty of voluntary manslaughter and to impose an appropriate sentence. The

appellate court reasoned that the specific finding on the voluntary manslaughter count that defendant believed justifying circumstances existed, which finding was supported by sufficient evidence, negated the requisite intent for murder. We view the *Stuller* decision as limited to its facts and do not believe it stands for the broad proposition now advanced that conviction of a lesser included offense automatically negates the requisite intent for the greater inclusive offense. Rather, we consider the *Stuller* rationale to apply in those instances where the jury has made a specific factual finding, supported by the evidence, on an issue in the lesser included offense which was not considered by the jury in its deliberations on the greater inclusive offense, and where the specific finding has the effect of negating a requisite element of the greater offense.

*People v. Fox* (1983), 114 Ill. App. 3d 593, 449 N.E.2d 261, also relied upon by defendant, offers little guidance on the double jeopardy question presented here and does not contradict our interpretation of *Stuller*. (*People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593.) In *Fox* the jury returned guilty verdicts on both murder and voluntary manslaughter. The trial court sentenced defendant only on the murder charges. Relying upon *Stuller*, the appellate court vacated the murder conviction, affirmed the voluntary manslaughter conviction, and remanded the cause for imposition of an appropriate sentence. In so doing, the court stated that the jury's specific finding of provocation negated the requisite intent for murder and thus the conviction of voluntary manslaughter had the effect of an implied acquittal of the graver charge of murder. (*People v. Fox* (1983), 114 Ill. App. 3d 593, 595, 449 N.E.2d 261.) In reaching this conclusion, however, the court did not discuss the issues instruction given to the jury for murder and whether the jury was specifically requested to find that defendant did not act under provocation in order to sustain the charge. We therefore find the *Fox* case to be not uninstructive here.

In the case at bar the jury was instructed on murder, voluntary manslaughter and involuntary manslaughter. The issues instruction for involuntary manslaughter required the jury to find the mental state of recklessness in order to prove defendant guilty of that charge. (IPI Criminal No. 7.08 (2d ed. 1981); Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) "Recklessness" is defined as a "[conscious disregard of] a substantial and unjustifiable risk that circumstances exist or that a result will follow, *** and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1981, ch. 38, par. 4—6.) Thus, a person charged with involuntary manslaughter is charged with con-

sciously disregarding an unjustified risk that death or great bodily harm to another will result. In returning a guilty verdict on involuntary manslaughter, the jury specifically found that the mental state of recklessness existed here. This finding finds support in the record, since defendant testified to an accidental discharge of the gun. However, the jury also returned guilty verdicts on murder and voluntary manslaughter and thus also specifically found that defendant possessed the requisite mental state of either intent or knowledge. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (2), 9—2(b).) Such a finding also finds ample support in the record.

 Defendant argues that the guilty verdict on the involuntary manslaughter charge necessarily resulted in a finding that defendant's act was unintentional (see *People v. Wolski* (1980), 83 Ill. App. 3d 17, 403 N.E.2d 528), and that this finding negates the requisite intent for voluntary manslaughter and murder. While it is true that by definition the offense of involuntary manslaughter occurs when one unintentionally kills another (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)), it does not necessarily follow that a lack of intent is a necessary element of the offense. (See *People v. Bolden* (1978), 59 Ill. App. 3d 441, 447 n.2, 375 N.E.2d 898, stating in *dictum* that absence of intent is not an element of the offense; but *contra, People v. Bonzi* (1978), 65 Ill. App. 3d 927, 933, 382 N.E.2d 1300, suggesting that absence of intent is an element of the offense.) The only mental state required to sustain a conviction of involuntary manslaughter is that of recklessness (*People v. Cates* (1982), 111 Ill. App. 3d 681, 689, 444 N.E.2d 543), and a finding of recklessness does not, in our opinion, necessarily negate a finding of knowledge or intent. (See *People v. Better* (1975), 33 Ill. App. 3d 58, 66-67, 337 N.E.2d 272.) "Mental states of knowledge and recklessness are not susceptible to clear distinction." (*People v. Gross* (1977), 52 Ill. App. 3d 765, 771, 367 N.E.2d 1028.) Nevertheless, because the jury is presumed to have considered the instructions as a whole (*People v. Vega* (1982), 107 Ill. App. 3d 289, 294, 437 N.E.2d 919), and because of defendant's testimony on this issue, we agree that the verdict of guilty on this charge implies a finding of a lack of intent. Even so, it is clear that the jury was not silent on the intent issue when it returned the guilty verdicts on murder and voluntary manslaughter and, in fact, specifically found that the requisite intent for those crimes existed. Under these circumstances, we find little support for defendant's position in the *Stuller* and *Fox* cases and accordingly find that the conviction of involuntary manslaughter did not amount to an implied acquittal of the murder and voluntary manslaughter offenses.

While we conclude that the doctrine of "implied acquittal" is not

applicable here, we nevertheless must consider what effect, if any, the apparent inconsistency in the verdicts has on defendant's conviction.

Traditionally, Illinois law provided that verdicts were not required to be logically consistent so long as they were legally consistent. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Taylor* (1976), 36 Ill. App. 3d 898, 344 N.E.2d 742.) Verdicts are legally inconsistent where they necessarily involve the conclusion that the same essential elements of each offense were found both to exist and not to exist. (*People v. O'Malley* (1982), 108 Ill. App. 3d 823, 439 N.E.2d 998; *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186.) Logical inconsistency is present where the verdicts demonstrate both the acceptance and rejection of one party's theory of the case. 34 Ill. App. 3d 521, 340 N.E.2d 186.

For some period of time legal thinking abounded that the supreme court in its ruling in *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61, had effectively overruled *Hairston* as to the invalidity of legally inconsistent verdicts. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) This reasoning was followed in certain appellate court decisions. (See *People v. Harris* (1982), 104 Ill. App. 3d 833, 433 N.E.2d 343; *People v. Jimerson* (1979), 69 Ill. App. 3d 403, 388 N.E.2d 10; *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186; *People v. O'Malley* (1982), 108 Ill. App. 3d 823, 439 N.E.2d 998.) The supreme court in the recent case of *People v. Frias* (1983), 99 Ill. 2d 193, 198-99, 457 N.E.2d 1233, totally laid this legal theory to rest by specifically ruling that it had not in its *Dawson* decision overruled *Hairston*.

There is a further distinguishing feature between the case before us and *Dawson* and the cases that applied its rationale, that being in *Dawson* there was a conviction on one charge and an acquittal on others. (*People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61.) Here, the defendant was convicted of every offense upon which the jury was instructed, obviously negating any theory of lenity, and in our opinion would have required reversal regardless of the interpretation of *Dawson*. However, the supreme court in *Frias* noted the circumstances of inconsistent verdicts where the defendant was found guilty of all charges, and stated:

"In *People v. Hairston* (1970), 46 Ill. 2d 348, 361, this court, while recognizing that legally inconsistent verdicts could not

stand, held that where inconsistent verdicts of guilty are returned, a reversal and new trial on all counts must follow." *People v. Frias* (1983), 99 Ill. 2d 193, 203, 457 N.E.2d 1233.

■ In a situation such as this one, we believe inconsistency in the verdicts implies confusion on the part of the trier of fact. In the present case, both types of inconsistency are suggested by the verdicts, as is evidenced by the elements of the offenses and the instructions to the jury.

The elements of the offense of murder are the killing of an individual without lawful justification, combined with the intent to kill or do great bodily harm or the knowledge that there is a strong probability of that result. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a).) Because self-defense may justify the use of force (Ill. Rev. Stat. 1981, ch. 38, par. 7—1), self-defense is an affirmative defense to the charge of murder and, where raised by the defendant, must be disproved by the State to establish the offense. *(People v. Pappas* (1978), 66 Ill. App. 3d 360, 383 N.E.2d 1190, *cert. denied* (1979), 444 U.S. 843, 62 L. Ed. 2d 55, 100 S. Ct. 85; *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303.) Where the defendant has intentionally or knowingly killed an individual, but acts with an unreasonable belief that the killing was justified, *e.g.*, as self-defense, the offense committed is voluntary manslaughter, rather than murder. (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(b); *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409; see *People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78.) The jury was so instructed. Additionally, the jury was instructed that, to establish guilt of murder, the State was required to prove that defendant did not believe that circumstances existed which justified the use of force. This instructional element, formerly part of the standard instructions in cases where a self-defense claim was raised in a murder prosecution (IPI Criminal No. 27.01 (1968)), has been deleted from the form instructions for such cases. (IPI Criminal No. 27.01 (2d ed. 1981).) However, this instruction represents a correct statement of the law *(People v. Vega* (1982), 107 Ill. App. 3d 289, 437 N.E.2d 919), which is designed to make the jury aware of the distinction between the crimes of murder and voluntary manslaughter. *People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593.

The jury's verdict finding defendant guilty of voluntary manslaughter necessarily implies that the jury concluded that defendant believed, although unreasonably, that circumstances existed which justified his action. *(People v. Goodwin* (1981), 98 Ill. App. 3d 726, 424 N.E.2d 425; *People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593; see *People v. Fox* (1983), 114 Ill. App. 3d 593, 449 N.E.2d 261

(voluntary manslaughter verdict implied finding of provocation).) This finding is both logically and legally inconsistent with the verdict that defendant was guilty of murder, which involved the determination, especially in light of the instructions given in the murder charge, that defendant did not believe that his conduct was justified.

There was evidence in support of voluntary manslaughter. Defendant knew Peters possessed guns, was skilled in the use of firearms, and previously threatened or spoke of threatening people, including defendant, with guns. Peters was intoxicated and had been belligerent toward others earlier that evening. Immediately before the shot was fired, defendant testified that he saw Peters lower his hands and begin to turn around, a movement which made defendant think that Peters was going to get a gun. Defendant had been afraid that Peters might try to harm him, Einsiedel, or Shannon. The unreasonableness of any belief by defendant that self-defense was necessary is demonstrated by the fact that Peters was unarmed, his mode of dress, a T-shirt and jeans, would have revealed any weapon that was present, Peters and defendant were separated by a distance of several feet, there had been no physical fight between them, and Peters had not threatened to get a weapon.

On the other hand, there was also ample evidence to establish an intentional killing without a belief that the homicide was justifiable. This was the trial court's rationale for vacating the voluntary manslaughter and involuntary manslaughter convictions and allowing the murder conviction to stand. Although defendant denied the statement, his own sister testified that defendant stated that he was going to be ready for Peters when he returned, and told Peters that "I should blow you away." Einsiedel testified that defendant had the shotgun in an aimed position. Peters was unarmed, which should have been apparent to defendant, as he had a full view of Peters' body during their conversation and Peters was dressed in only a T-shirt and jeans. Peters was shot in the back, at a time when he was several feet from defendant and walking away from defendant. Just prior to being shot Peters had his back toward defendant and his arms in the air. The two men had not engaged in any physical fight. The safety device on defendant's shotgun was off when police recovered the weapon. Defendant had taken the safety device off of the shotgun, which was loaded, when Peters began walking down the porch stairs. The gun was in proper working order. Thus, the evidence could be viewed as negating any claim that defendant believed he was acting in self-defense (see *People v. Pappas* (1978), 66 Ill. App. 3d 360, 383 N.E.2d 1190, *cert. denied* (1979), 444 U.S. 843, 62 L. Ed. 2d 55, 100 S. Ct.

85) or that the shooting was unintentional.

Another inconsistency is presented due to the verdict finding defendant guilty of involuntary manslaughter. As previously stated, involuntary manslaughter is committed when a person unintentionally kills an individual without lawful justification while recklessly performing acts which are likely to cause death or great bodily harm. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.) The jury was instructed as to the intent requirements of murder and voluntary manslaughter and advised that the definition of involuntary manslaughter involved an unintentional act, although a lack of intent was not included as an issue in the issues instruction.

The distinction between these mental states suggests that the verdict finding defendant guilty of involuntary manslaughter is at least logically inconsistent with the guilty verdicts on the murder and voluntary manslaughter charges. While we believe, as previously stated, that a finding of recklessness does not necessarily negate a finding of knowledge (see *People v. Better* (1975), 33 Ill. App. 3d 58, 66-67, 337 N.E.2d 272), the jury's apparent simultaneous finding of intent and lack of intent is inherently irreconcilable, especially since defendant fired only one shot directed at a single victim and therefore cannot be found to have had more than one mental state. See *People v. Harris* (1982), 104 Ill. App. 3d 833, 433 N.E.2d 343; *People v. Roman* (1981), 98 Ill. App. 3d 703, 424 N.E.2d 794; *People v. Norris* (1969), 118 Ill. App. 2d 406, 254 N.E.2d 304.

The three guilty verdicts returned here thus demonstrate that the jury determined that defendant did (voluntary manslaughter) and did not (murder) believe that his conduct was justified, and determined that defendant's actions were intentional or knowing (murder, voluntary manslaughter) and unintentional (involuntary manslaughter). (See Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a), 9—2(b), 9—3; *People v. Cowen* (1979), 68 Ill. App. 3d 437, 386 N.E.2d 435.) In our opinion, this confusion on the part of the trier of fact, as evidenced by legally and logically inconsistent verdicts, requires reversal and remandment to the trial court for a new trial. (*People v. Frias* (1983), 99 Ill. 2d 193, 203, 457 N.E.2d 1233.) Defendant notably has not challenged the sufficiency of the evidence against him.

We note that the inconsistent verdicts in this case may have stemmed, in part, from the statutory definitions of murder and involuntary manslaughter and from the recommended forms of verdict in Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) on these two offenses. This problem is extensively discussed in two recent law review articles. (See Haddad, *Allocation of Burdens in Murder-Volun-*

*tary Manslaughter Cases: An Affirmative Defense Approach,* 59 Chi.-Kent L. Rev. 23 (1982); O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary,* 32 De Paul L. Rev. 107 (1982).) To avoid the result of inconsistent guilty verdicts being returned by a jury in murder-manslaughter cases some trial judges have utilized the number of verdict forms contained in the original edition of Illinois Pattern Jury Instructions, Criminal (1968), which recommends only three forms of verdict in a murder-manslaughter case, *i.e.* guilty of murder, guilty of voluntary manslaughter, and not guilty, and the jury is further instructed to select and sign only the one form reflecting their verdict. (See IPI Criminal No. 27.01, Sample Set of Instructions (1968).) In the case at bar, however, the trial judge gave six forms of verdicts to the jury, three guilty and three not guilty verdicts, as recommended in IPI Criminal No. 27.01, Sample Set of Instructions (2d ed. 1981). This approach may have contributed to the inconsistent verdicts obtained here.

For the foregoing reasons, the order vacating the convictions for voluntary manslaughter and involuntary manslaughter is set aside. The convictions for murder, voluntary manslaughter, and involuntary manslaughter are reversed and the cause remanded for a new trial.

Reversed and remanded.

REINHARD and VAN DEUSEN, JJ., concur.