THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELLIS AUSTIN, Defendant-Appellant.

First District (5th Division)   No. 1—92—0609

Opinion filed June 24, 1994.

Sternberg & Associates, of Chicago (Gary Sternberg, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Robert F. Hogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Ellis Austin (defendant) appeals his attempted armed robbery conviction because the jury acquitted him of first degree murder in the same proceeding. Defendant also appeals his 13-year sentence rendered by the trial court.

The issues presented for review are (1) whether the jury's verdicts—finding defendant not guilty of the first degree murder charge and guilty of the attempted armed robbery charge—were legally inconsistent requiring application of the doctrine of collateral estoppel and (2) whether the State proved defendant guilty of attempted armed robbery beyond a reasonable doubt.

We affirm.

## BACKGROUND

On October 4, 1989, defendant and three accomplices, Farrell Hall (Hall), Terrance Steele (Steele), and Kevin Cathey (Cathey) participated in four armed robberies, the last of which resulted in the murder of Derrick Hall (victim).

The first robbery occurred after 7 p.m. in Bellwood, Illinois, as Lionel Gilmer (Gilmer) was walking home from work. Two men approached him. Gilmer later identified defendant as having been the perpetrator who wielded a gun. Defendant pointed the gun in Gilmer's face and ordered, "Give up your shit." Gilmer surrendered his "Task Force" Starter jacket, a walkman, a pager, and $200 in cash. Defendant and the other offender then fled down an alley, entered a station wagon, and drove away.

The second robbery occurred about an hour and a half later in Maywood, Illinois, as Steven White (White) was walking home. Again, two men approached him. White later identified defendant as having a gun. Defendant and his accomplice demanded White's Washington Redskins jacket and hat. When White tried to run, defendant fired the gun at him. White stopped. Defendant and the other perpetrator took his jacket and hat and ran away.

The third robbery followed shortly thereafter at the Henry Horner Homes, a housing project development. This time, Cathey and Hall got out of the station wagon and robbed two men of their Starter jackets at gunpoint. No one reported this robbery to the police.

The final robbery, which resulted in the victim's murder, occurred in the vicinity of Thomas and Western Streets in Chicago. Ricardo Vigo (Vigo), an eyewitness, testified that he and the victim had been waiting at a southbound bus stop on Thomas and Western when four people in a station wagon stopped nearby.

From four feet away, Vigo testified that he saw one male black

exit the car and approach the victim, who was wearing a blue Starter jacket. The offender told the victim to give him his Starter jacket. As the victim began to take off his jacket, the perpetrator shot him, ran back to the station wagon, and left. Vigo did not see defendant that night.

Gaspar Rios (Rios), who was standing from a different vantage point, testified that he was approximately three-quarters of a city block away when a dark-colored station wagon with "safari woodgrain along the sides" stopped. Four people were in the car.

At first, one male black person exited from the front passenger side of the vehicle. This individual went to the bus stop where the victim was situated. The victim was wearing a dark navy blue jacket that had orange stripes on its sleeves (Chicago Bears Starter jacket). The first person who exited the car approached the victim and tried to take his jacket. The victim started to run.

At that moment, a second person egressed from the vehicle from the rear side of the driver's side and ran towards the victim. The victim started to run into the middle of the street, at which time the second person who exited the station wagon shot him. The victim fell in the middle of the street. The two men then ran back to the station wagon, jumped in the car, and left. Rios further testified that he did not see defendant that night. However, as the car was speeding away, he identified Steele as the driver. The victim later died.

After investigation, the police arrested and indicted defendant along with Cathey, Hall, and Steele. Defendant was charged with first degree murder and attempted armed robbery. Defendant pled not guilty and was tried separately.

The jury found defendant guilty of attempted armed robbery and acquitted him of first degree murder. The trial court sentenced him to 13 years' imprisonment at the Illinois Department of Corrections.

We affirm.

OPINION

I

Defendant contends that the jury's verdicts were legally inconsistent, thus requiring application of the doctrine of collateral estoppel. We disagree.

The doctrine of collateral estoppel provides:

> "[W]hen an issue of ultimate fact has once been determined by a *valid and final judgment*, that issue cannot again be litigated between the same parties in any *future* lawsuit." (Emphasis added.) *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.

Two or more offenses may emanate from the same transaction, and the rule that a person cannot be put twice in jeopardy for the same offense has no application where two separate and distinct crimes are committed by the same act. (*People v. Hairston* (1970), 46 Ill. 2d 348, 358, 263 N.E.2d 840.) In the case *sub judice*, defendant's first degree murder and attempted armed robbery charges were two separate and distinct crimes which emanated from the same act.

The first degree murder statute (720 ILCS 5/9—1 (West 1992)) provides:

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) he is attempting or committing a forcible felony other than second degree murder."

The armed robbery statute (720 ILCS 5/18—2 (West 1992)) provides:

"A person commits armed robbery when he or she violates Section 18—1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon."[1]

And:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a *substantial step* toward the commission of that offense." (Emphasis added.) 720 ILCS 5/8—4 (West 1992).

In the case under judicial consideration, defendant asserts that the jury's verdicts were legally inconsistent because it acquitted him of first degree murder but found him guilty of attempted armed robbery.

Verdicts will only be set aside if legally inconsistent. (*People v. Wilson* (1993), 257 Ill. App. 3d 670, 703, 628 N.E.2d 472, 496.) Verdicts are legally inconsistent where they necessarily involve the conclusion that the same essential elements of each offense are found both to exist and not to exist even though the offenses arise out of the same set of facts. *Wilson*, 257 Ill. App. 3d at 703, 628 N.E.2d at 496-97; *People v. Hoffer* (1984), 122 Ill. App. 3d 13, 20, 460 N.E.2d 824; *People v. Murray* (1975), 34 Ill. App. 3d 521, 531, 340 N.E.2d 186.

---

[1]The robbery statute provides that "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—1 (West 1992).

Moreover, an acquittal of a murder charge does not preclude an armed robbery conviction. (*People v. Rudolph* (1977), 50 Ill. App. 3d 559, 565, 365 N.E.2d 930.) Nor would such a verdict be legally inconsistent. *People v. Clemons* (1989), 179 Ill. App. 3d 667, 673, 534 N.E.2d 676 (jury's verdict of not guilty of felony murder in the commission of armed robbery is not inconsistent with its finding of guilty for armed robbery); *Rudolph*, 50 Ill. App. 3d at 565.

■ In the case at bar, the jury's verdicts cannot be considered legally inconsistent because its resolution of one charge did not preclude an opposite resolution on the other charge. (See *Wilson*, 257 Ill. App. 3d at 703-04, 628 N.E.2d at 497.) Further, jurors may act with lenity. See *People v. McClellan* (1992), 232 Ill. App. 3d 990, 1009, 600 N.E.2d 407.

For first degree murder, a person who kills must either intend to kill, or do great bodily harm, or know that such acts create a strong probability of death or great bodily harm, or be attempting or committing a forcible felony other than second degree murder. For attempted armed robbery, a person must have a dangerous weapon and take a substantial step with the intent to take property from another by use of force or threat of force. Further, first degree murder is a completed act while attempted armed robbery describes an inchoate offense—the perpetrator has taken a substantial step in carrying out the offense but has not yet perfected it.

According to the evidence from the record, and in consonance with existing Illinois law, we do not find the verdicts to be *legally* inconsistent because a comparison of the essential statutory elements of the three forms of murder and attempted armed robbery shows they are distinct.

## II

Defendant next contends that the State did not prove him guilty of attempted armed robbery beyond a reasonable doubt. We disagree.

On review, a criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. (*People v. Tye* (1990), 141 Ill. 2d 1, 13, 565 N.E.2d 931; And, determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence all lie within the jury's province. (*People v. Steidl* (1991), 142 Ill. 2d 204, 226, 568 N.E.2d 837.) Thus, the relevant inquiry in determining whether a prosecutor has proven a defendant guilty beyond a reasonable doubt is:

"whether, after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

See also *People v. Tye* (1990), 141 Ill. 2d 1, 14, 565 N.E.2d 931; *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

As the fact finder's role as weigher of the evidence is preserved, it is not the function of the reviewing courts to retry the defendant, and a "criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

The accountability statute, in pertinent part, provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2 (West 1992).

■ Here, the State effectively proved that defendant aided and abetted in the planning of the armed robbery. While defendant did not attempt to rob the victim personally, in this case, defendant was nonetheless responsible for his accomplices' acts. By his own admission, defendant and his accomplices set out for a night of robbery of random victims. He personally robbed victims on at least two occasions earlier that same evening.

It is clear that in the fourth robbery of the evening, Hall was following the same pattern that he, along with Cathey, Steele, and defendant were following in the commission of the earlier robberies. It is also clear that they randomly selected their victims and took turns robbing them. Defendant aided in the commission of the crimes by planning the *modus operandi* which was used during the evening.

For the foregoing reasons, we affirm.

Judgment affirmed.

GORDON and McNULTY, JJ., concur.