THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY L. FOX, Defendant-Appellant.

First District (3rd Division)   No. 81—815

Opinion filed May 11, 1983.

Sidney I. Schenkier and Eugene R. Wedoff, both of Chicago (Jenner &
Block, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Richard B. Levy, and Daniel Jordan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

After a jury trial, defendant, Anthony L. Fox, was found guilty of the murder and voluntary manslaughter of Charmette Parker, the attempted murder of Nathan Davis and home invasion. The trial judge entered judgment on all of these verdicts, and sentenced defendant to prison terms of 35 years for murder, 30 years for attempted murder, and 30 years for the home invasion conviction. Defendant appeals from these convictions and sentences.

On October 4, 1979, defendant shot and killed Charmette Parker; he also shot and wounded Nathan Davis. The events that gave rise to these shootings are as follows:

The evidence at trial showed that defendant first met Parker in April 1978. Defendant and Parker began dating regularly, exchanged keys to one another's residences and, by January 1979, had made plans to marry. In August 1979, defendant learned that Parker was dating Nathan Davis. Shortly thereafter Fox resolved to break off the relationship with Parker and attempted to return the key to her townhouse. However, they both "broke into tears" at the thought of ending their relationship; Fox kept the key to Parker's townhouse and they continued to see one another.

At approximately 11 p.m. on the night in question, Parker was at her home with Davis. While Davis and Parker were in the bedroom, Davis heard someone at the downstairs door. Davis got out of bed and stood in the hallway. Both Davis and Parker were undressed at that time. Defendant entered Parker's home and when inside, took an automatic pistol from his shoulder holster and proceeded to run up the stairs toward the bedroom. Davis stepped back into the bedroom and closed the door. Defendant followed and, demanding entry into the room, fired a shot in the hallway. Davis then opened the door and defendant entered, at which time he saw Davis and Parker naked. Defendant shot Davis twice, once in the stomach and once in the knee. He then shot Parker twice in the head. Parker died as a result of defendant's actions, Davis did not.

■ Defendant first argues that because the jury found him guilty of voluntary manslaughter, the trial court erred by entering judgment and sentencing defendant on the verdict of guilty of murder. Defendant asserts that the jury's finding of guilty of voluntary manslaughter negates the mental state required for a murder conviction and, thus,

defendant's murder conviction must be vacated. We agree.

The crime of voluntary manslaughter is defined as follows:

> "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) The individual killed ***.
> ***
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1979, ch. 38, par. 9—2.)

Thus the offense of voluntary manslaughter is an acknowledgement by the law of the mitigating effect of human weakness and intense passion in an otherwise unjustified homicide. (*People v. Leonard* (1981), 83 Ill. 2d 411, 420, 415 N.E.2d 358.) The essential difference between murder and voluntary manslaughter is the mental state of the accused at the time of the killing. (*People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 1111, 405 N.E.2d 1295.) Voluntary manslaughter has been described as " '[a]n intentional homicide committed in a sudden rage of passion engendered by adequate provocation, and *not the result of malice* conceived before the provocation ***.' " (Emphasis added.) *People v. Leonard* (1981), 83 Ill. 2d 411, 420, quoting Perkins, *The Law of Homicide*, 36 J. Crim. L. & Criminology 391, 412 (1946).

■ The jury in this case returned a verdict of guilty of voluntary manslaughter. Therefore, it found that defendant was seriously provoked and acted under a sudden and intense passion. Such a finding is supported by the evidence that defendant found his fiance, Parker, and Nathan Davis, together, naked, in her bedroom. Moreover, this finding conclusively negated the requisite level of intent for the offense of murder and, thus, constituted an implied acquittal of the murder charge. See *People v. Smith* (1973), 16 Ill. App. 3d 553, 306 N.E.2d 606; *People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.

■ Nevertheless the jury also returned a verdict of guilty of murder. That verdict, however, does not negate the jury's finding of voluntary manslaughter. (*People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593.) In *Stuller* the jury returned verdicts of guilty of murder and guilty of voluntary manslaughter. The trial judge vacated the voluntary manslaughter verdict and entered judgment on the murder verdict. The appellate court reversed the murder conviction, and remanded the cause to the circuit court with instructions to enter a finding of guilty of voluntary manslaughter and to impose an appro-

priate sentence. The appellate court reasoned that a finding of voluntary manslaughter negated the requisite intent for the offense of murder and that the multiple verdicts were the result of a crucial element of a murder instruction being omitted.

We find *Stuller* dispositive of the instant case. Here, defendant's conviction of voluntary manslaughter had the effect of an acquittal of the graver charge of murder. (See *People v. Keith* (1978), 66 Ill. App. 3d 93, 102, 383 N.E.2d 655.) The doctrine of former jeopardy bars any further prosecution on the greater offense, for if defendant were tried again for murder, a charge of which he has already been impliedly acquitted, he would be twice put in jeopardy for the same offense in violation of the provisions of our constitution. (Ill. Const. 1970, art. I, sec. 10; *People v. Keith* (1978), 66 Ill. App. 3d 93, 102.) Accordingly, we vacate defendant's conviction of murder, affirm his conviction of voluntary manslaughter and remand for imposition of sentence on the voluntary manslaughter conviction.

■ Defendant next contends that the trial court erred in refusing to instruct the jury on aggravated battery as well as attempted murder for defendant's shooting of Nathan Davis. The trial judge refused the tendered aggravated battery instruction on the ground that defendant shot Davis twice. The State maintains that the trial judge properly rejected defendant's aggravated battery instruction since the evidence at trial clearly established defendant's specific intent to kill.

If there is any evidence supporting the defendant's theory of the case, then the court should allow an instruction tendered by defendant that embodies his theory. (*People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 897, 368 N.E.2d 174.) Therefore, where there is sufficient evidence, a trial judge must instruct a jury on aggravated battery as a lesser included offense of attempted murder. *People v. Smith* (1981), 94 Ill. App. 3d 969, 419 N.E.2d 404.

■ Conviction for the crime of attempted murder requires a finding that defendant specifically intended to kill the victim, while aggravated battery requires no specific intent. (*People v. Hancock* (1980), 83 Ill. App. 3d 700, 704, 404 N.E.2d 914.) Aggravated battery involves the commission of a battery with the intention or knowledge that great bodily harm will result. Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a).

In this case an instruction for the offense of aggravated battery should have been given. The fact that defendant shot Nathan Davis twice is consistent with the intent to kill that is necessary for attempted murder, but it does not necessarily show that. Rather, the firing of two shots, under the circumstances of the instant case, is

also consistent with the finding of "intention or knowledge that great bodily harm will result." From the evidence presented at trial, the jury could have concluded either that defendant possessed the specific intent to kill Davis or that defendant acted in the heat of passion and lacked the level of intent necessary to establish the offense of attempted murder. Therefore, defendant's conviction for attempted murder is reversed and remanded for a new trial.

■ Defendant next contends that the State failed to prove beyond a reasonable doubt that defendant made an unauthorized entry into Parker's apartment and, therefore, the home invasion conviction must be vacated. The offense of home invasion is defined by Illinois law as follows:

> "A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and
>
> (1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or
>
> (2) Intentionally causes any injury to any person or persons within such dwelling place." (Ill. Rev. Stat. 1979, ch. 38, par. 12—11.)

Under this statute the gravamen of the offense is the unauthorized entry. See *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1109, 412 N.E.2d 721.

On the record before us we conclude that the jury could have found that defendant entered the home of Parker without authority. Defendant maintains that the State failed to prove his lack of authority to enter Parker's house in light of his testimony which showed that he possessed a key to her townhouse and that he had contributed to payments on it and that on a number of occasions he had entered the townhouse without Parker's permission. However, Nathan Davis testified that on the night in question, and immediately prior to defendant's entry, he heard "the breaking of glass in the doorway." Moreover the police officer who questioned defendant on the night in question testified that defendant told him that he had gained entry into Parker's home by reaching through a previously broken pane of glass and unlocking the door. Therefore, even if defendant did possess a key to Parker's home, in light of all of the evidence presented at trial, we believe that defendant's conviction for home invasion was

not so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt. *People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.

Defendant finally contends that the sentences imposed by the trial court were excessive because they fail to reflect mitigating factors and defendant's rehabilitative potential and, thus, must be reduced. In light of our disposition of the foregoing matters we need not address this issue in regard to the sentences for murder and attempted murder. However, we must vacate defendant's sentence on the home invasion conviction and remand for resentencing on that conviction. We cannot be certain that the presence of the murder and attempted murder convictions did not influence the trial court's sentence on the home invasion conviction. See *People v. Alejos* (1982), 104 Ill. App. 3d 414, 432 N.E.2d 1046; *People v. Filker* (1981), 101 Ill. App. 3d 228, 229, 427 N.E.2d 1311.

In summary, defendant's conviction of murder is vacated, his conviction of voluntary manslaughter is affirmed and remanded for imposition of sentence; his conviction of attempted murder is reversed and remanded for a new trial; and his conviction of home invasion is affirmed and remanded for resentencing.

Reversed in part, affirmed in part, and remanded with directions.

RIZZI and O'CONNOR, JJ., concur.