**Peter J. KENNEDY, Petitioner–Appellant,**

**v.**

**Odie WASHINGTON, Warden, Dixon Correctional Center, Respondent–Appellee.**

No. 91–3517.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1992.

Decided Feb. 23, 1993.

Rehearing and Rehearing En Banc Denied March 31, 1993.

William J. Stevens, Chicago, IL (argued), for Peter J. Kennedy.

Marcia L. Friedl, Asst. Atty. Gen., Chicago, IL (argued), Karen A. Kloppe, Crim. Appeals Div., Springfield, IL, for Odie Washington, Warden, Dixon Correctional Center.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.[*]

POSNER, Circuit Judge.

■ Once the jury in a criminal trial is sworn, the defendant's right under the double jeopardy clause not to be prosecuted a second or subsequent time for the same crime attaches, and only if there is error in the first trial can that right be made to yield to the government's interest in convicting the guilty. Peter Kennedy has been put on trial for murder three times for a vehicular homicide that he committed in 1983. The third trial resulted (as had the first) in a conviction of murder and a 20–year sentence. After exhausting his state remedies in *People v. Kennedy*, 204 Ill.App.3d 681, 149 Ill.Dec. 651, 561 N.E.2d 1347 (1990), he filed a petition for habeas corpus in federal district court. The petition was denied, and he appeals.

Kennedy had driven with a friend to Henry, Illinois, one night to go bar-hopping. The two men left the last bar after midnight. Outside the bar, Kennedy, extremely drunk, got into an argument with a local resident. A small crowd gathered. Blows were exchanged. Kennedy and his roommate retreated to Kennedy's car, which was parked nearby. They leapt in and drove off, Kennedy driving. Someone in the crowd hurled the lid of a garbage can at the car. Kennedy drove out of town, then decided he must have revenge and drove back. Careening the wrong way down a one-way street he pulled up next to a pickup truck driven by a resident and told him to go and get his buddies. Again a crowd gathered, this time numbering between 15 and 25 people. Kennedy took a baseball bat out of his car and swung, but did not strike anyone. Someone took a swing at him and may have hit him, though this is uncertain. Kennedy threw his bat aside, got back into his car, and drove off. As he did, a woman grabbed the bat that he had discarded and struck Kennedy's car with it. Kennedy continued a short distance and then made a U-turn and came roaring back, aiming his car at a man who was now holding Kennedy's bat. The man jumped behind a lamppost. Swerving to avoid the lamppost, Kennedy drove on the sidewalk at 30 to 35 m.p.h., crossed the alley at the end of the block, and, on the other side of the alley, struck a building and a woman, killing her.

An unjustified killing is murder under Illinois law if (so far as relevant here) the killer either (1) intends to kill his victim, or (2) knows that his conduct "create[s] a strong probability of death or great bodily harm to" his victim or another. Ill.Rev. Stat. ch. 38, ¶¶ 9–1(a)(1), (a)(2). An unjustified killing is voluntary manslaughter if "at the time of the killing [the killer] is acting under a sudden and intense passion resulting from serious provocation." ¶ 9–2(a). The case went to the jury at Kennedy's first trial on charges of both forms of murder (intentional and what we shall call "nonintentional" murder, to distinguish the two) and voluntary manslaughter. (There were other charges as well, but we can ignore them.) The jury, not being instructed that it could convict the defendant of only one of these offenses, acquitted Kennedy of intentional murder but convicted him both of nonintentional murder and of voluntary manslaughter. The judge sentenced him to 20 years for murder, nothing for voluntary manslaughter. He appealed to the Illinois Appellate Court, which in an unpublished opinion reversed the judgment and remanded the case for a new trial on the ground that the murder and manslaughter verdicts were inconsistent. If as the manslaughter verdict implied the defen-

[*] Hon. Hubert L. Will of the Northern District of Illinois, sitting by designation.

dant had been acting under the compulsion of "a sudden and intense passion," he could not be guilty of murder, for it is the fact of acting under such a compulsion that reduces an unjustified killing from murder to voluntary manslaughter. The second trial ended in a mistrial, the third trial in the conviction and sentence now under review. At the second and third trials, the only charge was what we are calling nonintentional murder (i.e., ¶ 9–1(a)(2)); there was no charge of voluntary manslaughter.

Kennedy's main argument is that since the jury that convicted him the first time of both murder and manslaughter must in finding him guilty of the latter have determined that he had acted under the compulsion of a sudden and intense passion and therefore did not have the mental state required for murder, that jury must be deemed to have acquitted him of murder. This "implied acquittal," he argues, protects him from being retried. The state responds that the first jury obviously was confused; it failed to understand that a defendant cannot be guilty of both murder and manslaughter. It cites our decision in *Flowers v. Illinois Dept. of Corrections*, 962 F.2d 703 (7th Cir.1992), cert. pending, where we rejected a similar but not identical claim of double jeopardy. The trial judge in *Flowers* had refused to accept the jury's verdict because of the inconsistency of finding both murder and manslaughter, and had sent the jury back to deliberate further. Here the judge accepted the verdict. Moreover, senseless though the verdict was, it was consistent with the instructions. Kennedy had killed a person, without justification, by acts creating a strong probability that death or great bodily injury would result from them. He had also been acting under provocation aggravated by intoxication. The jury was not told that although these two sets of fact—one concerning the dangerousness of the defendant's conduct, the other the mental state accompanying that conduct—are consistent, if it found the second to be present it had to acquit the defendant of murder, the offense implied by the first set of facts, the facts concerning the dangerousness of the defendant's conduct. Because the verdict

of voluntary manslaughter implies, if the jury is assumed to have followed the instructions, which is the usual assumption, a finding beyond a reasonable doubt that Kennedy had acted under a sudden and intense passion, the verdict could be thought to bar a further trial of Kennedy for murder, instead of convicting him of that crime as the jury thought.

 When a jury returns an inconsistent verdict—for example convicting the defendant on count 1, which implies that the jury found A, and acquitting him on count 2, which implies that the jury found not A— the implied "finding" of not A on the second count does not require the court to deem the defendant acquitted of the first count. The findings of A and not A are inconsistent, and to pick out one as dispositive of both counts would be arbitrary. Yet the verdict, though inconsistent, is allowed to stand, *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Hoffer v. Morrow*, 797 F.2d 348 (7th Cir.1986), on the theory that probably the jury actually found A and then acquitted on count 2 as an exercise of lenity. The present case is different. There was no inconsistency in the jury's convicting Kennedy of both crimes under instructions that made the crimes differ only in that one had one more element than the other. It is improper, but it is not inconsistent, for a jury that is told that assault is hitting and murder is killing to convict a defendant who has murdered by hitting of both crimes; since there is no inconsistency to undermine the reliability of the jury's findings, the impropriety is easily cured by sentencing the defendant for just one of the crimes. Cf. *United States v. Gaddis*, 424 U.S. 544, 549, 96 S.Ct. 1023, 1026, 47 L.Ed.2d 222 (1976). Here, Kennedy argues, the lack of inconsistency works in the defendant's favor. If murder (more precisely, what we are calling nonintentional murder) is unjustified killing by deliberate acts that knowingly create a strong probability of death or of serious bodily harm, and the jury was told that voluntary manslaughter is the same except that the defendant was in the grip of a sudden and

intense passion, there was no inconsistency in the jury's finding the elements of both crimes present. As there is no room for a hypothesis of lenity, since Kennedy was convicted of both crimes, he concludes that an unconfused jury found that he had acted under a sudden and intense passion when he ran down his victim, so he cannot have been guilty of murder, but only of manslaughter.

It is a powerful argument, but it contains a fallacy; it equates acting consistently with not being confused. There is nothing inconsistent in believing that one is a bird and jumping out of a twenty-seventh floor window, arms flapping, but a human being who acts so is seriously confused. For many years Illinois judges submitted homicide cases to juries in the confusing fashion illustrated by this case. By failing to instruct the jury, as should be done when provocation is argued, *People v. Hoffer*, 106 Ill.2d 186, 195, 88 Ill.Dec. 20, 27–28, 478 N.E.2d 335, 342–43 (1985), that it could not convict the defendant of murder if it found that he had been acting out of a sudden and intense passion, the instructions created the impression that voluntary manslaughter differed from murder only in having an *additional* element, sudden and intense passion, as if murder were a lesser included offense of voluntary manslaughter! Jurors know that murder is a more serious crime than manslaughter. They know that killing under provocation is less reprehensible than unprovoked killing. Despite the legal jargon in which these distinctions come clothed they correspond to fundamental moral intuitions. A jury of computers might have "known" that by convicting Kennedy of both crimes it was actually acquitting him of one. But a jury of human beings, in convicting Kennedy of murder, was more likely rejecting the plea in mitigation implicit in the instruction that killing under great provocation is merely voluntary manslaughter. Perhaps the jury thought Kennedy guilty of murder but was not entirely confident of this, so convicted him of voluntary manslaughter on the theory that if it was not murder that he had committed it must have been manslaughter. This is rank speculation. Given the instructions, one cannot have any confidence as to what the jury thought. That is why, as the Illinois Appellate Court correctly held on Kennedy's appeal, his conviction could not be upheld with respect to any of the offenses that the jury found.

We must keep in mind that Kennedy was convicted, not acquitted, of murder, or at least of what the jury thought was murder. He appealed his conviction, which as a result of the appeal and consequent reversal never became final. The alchemy is mysterious by which a conviction that at the defendant's urging is reversed on appeal turns into an acquittal that bars the retrial which is the ordinary and proper sequel to a conviction reversed at the defendant's urging. But Kennedy refers us to a line of cases in the Illinois Appellate Court, best illustrated by *People v. Fox*, 114 Ill.App.3d 593, 70 Ill.Dec. 387, 449 N.E.2d 261 (1983), which hold that in a case such as ours conviction of voluntary manslaughter operates as an "implied acquittal" of murder— even if the jury convicts of murder too. In *Green v. United States*, 355 U.S. 184, 190–91, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957), the Supreme Court endorsed the concept of an "implied acquittal" in the following circumstances: the jury had convicted the defendant of second-degree murder and failed to render any verdict on the charge of first-degree murder, and after the conviction of second-degree murder was set aside on the defendant's appeal he was retried and this time convicted of first-degree murder. *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), reaffirmed *Green.* And see *Hoffer v. Morrow, supra,* 797 F.2d at 351.

■ These cases illustrate the application of collateral-estoppel notions in double jeopardy cases, while *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), holds explicitly that collateral estoppel is a part of the constitutional protection against double jeopardy—an unsurprising conclusion because double jeopardy is the criminal counterpart of the civil doctrine of res judicata, of which the principle of collateral estoppel is a part. See also *Dowling v. United States*, 493 U.S. 342, 347, 110

S.Ct. 668, 671, 107 L.Ed.2d 708 (1990); *Hoffer v. Morrow, supra,* 797 F.2d at 352. A conviction, like a civil judgment (but, as held in *Dowling,* 493 U.S. at 349, 110 S.Ct. at 672, unlike an acquittal, which establishes only that a fact necessary to the defendant's guilt was not proved beyond a reasonable doubt), can establish a fact that binds the parties in a subsequent litigation. If that fact is inconsistent with the defendant's guilt of a particular crime, he cannot be reprosecuted for that crime. That is all that "implied acquittal" means. Green's conviction of second-degree murder established the existence of a fact (the state of mind required for that offense) that was inconsistent with his being guilty of first-degree murder, so his subsequent conviction of that offense was barred. But it is not as if Green had been convicted of both first-degree murder and second-degree murder. That would be like our case. In this hypothetical variant of *Green,* to treat the second conviction as the authentic one, knocking out the first, would be the same arbitrary move that Kennedy asks us to make. In the actual *Green* case, with but one verdict, there was no reason to doubt that the jury had in fact found the elements of the offense of which it convicted the defendant.

■ *Fox* is more problematic than *Green,* because there were two convictions, as in our case; but it is not necessarily incorrect. As far as one can judge from the Illinois Appellate Court's opinion (we have probed no deeper), the jury really did believe both that the defendant had engaged in conduct dangerous enough to make him guilty of murder and that he had acted with the state of mind described in the instructions as "sudden and intense passion." There was no reason to doubt that the second finding was one the jury had actually, knowingly, made. There was doubt in *People v. Washington,* 127 Ill. App.3d 365, 375 n. 2, 82 Ill.Dec. 505, 51 3 n. 2, 468 N.E.2d 1285, 1293 n. 2 (1984), another case in the *Fox* line; at least the court alludes, though fleetingly, to a potential for confusion; but it attached no significance to it. We think that was a mistake. The mistake was rectified by the Illinois Appellate Court's decision in the present case, rejecting (though without discussion of the issue) Kennedy's claim of double jeopardy. At all events, the question whether a conviction should be treated as an implied acquittal for purposes of the double jeopardy clause of the U.S. Constitution is a question of federal, not state, law, on which the decisions of the Illinois courts do not bind us.

■ The transcript of Kennedy's first trial discloses only one reference, other than in the instructions, to "sudden and intense passion": in closing argument his lawyer urged the jury that Kennedy had *not* been acting in that state. In his opening argument he may have been hinting at provocation in referring to Kennedy's having possibly acted unreasonably, but he did not use the terms "provocation" or "sudden and intense passion." The lawyer's whole pitch in his closing argument was that his client hadn't intended to hurt anyone or even known—so drunk was he—that he was creating a high probability of death or grave bodily harm. To act under provocation—for remember that under Illinois law the only "sudden and intense passion" that is relevant to voluntary manslaughter is that created by "serious provocation"—implies deliberate action, aimed at harming another. The lawyer denied that Kennedy had acted deliberately to harm anyone. Both the prosecutor and the defense lawyer, as well as the judge and doubtless the jurors as well, perceived no inconsistency if the jury convicted Kennedy of both murder and voluntary manslaughter—the prosecutor asked the jury to convict Kennedy of both and the defense lawyer asked the jury to acquit him of both. The only time the jury was presented with the option of acquitting of murder and convicting of voluntary manslaughter was in the instructions; and the instructions did not put the choice clearly, because they did not tell the jury that it was indeed an either-or, not an either-or-both, choice. Instructions can be confusing because they are incomplete, as well as because they are contradictory.

Collateral estoppel (issue preclusion) has never been as rigid as res judicata is in its sense as claim preclusion. A finding is entitled to collateral estoppel effect only if it is the product of a fair hearing. *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979); *Kairys v. INS*, 981 F.2d 937, 939–40 (7th Cir.1992). We consider this principle, which the Illinois Appellate Court overlooked in *People v. Washington,* applicable to the criminal setting as well as to the civil one, although we can find no cases on the point. *Scott v. Robertson*, 583 P.2d 188, 192 (Alaska 1978), is illustrative of cases that hold that a criminal conviction can have collateral estoppel effect in a subsequent civil case, but that of course is not our case. It is true that an acquittal bars reprosecution, however deficient the procedure that resulted in the acquittal. *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (per curiam). But that illustrates the res judicata component of double jeopardy, not the collateral estoppel component—and acquittals, as we have pointed out, have no collateral estoppel effect. Implied acquittals can have such an effect, but only because an implied acquittal is an express conviction, and a conviction implies that the jury found certain facts to have been proved beyond a reasonable doubt.

We need not decide, however, whether, if the jury were deemed to have implicitly found that Kennedy had acted under a sudden and intense passion, the finding would be entitled to collateral estoppel effect—or would be denied such effect on the ground either that it could not be deemed the product of a fair hearing, given the confusion injected by the instructions and the failure of the lawyers, including the defense lawyer, and the judge to dispel it, or that collateral estoppel has no proper application within a single case. *Ohio v. Johnson*, 467 U.S. 493, 500 n. 9, 104 S.Ct. 2536, 2541 n. 9, 81 L.Ed.2d 425 (1984); but cf. *United States v. Powell,* 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984). As the name implies, the doctrine limits "collateral" attacks on prior adjudications; here we have a single adjudication with successive stages.

We need not pursue these issues. The anterior question to whether a finding shall be given collateral estoppel effect is whether there *was* a finding, here that the defendant acted under the compulsion of a sudden and intense passion. We think there was not. There was of course no express finding that Kennedy had been acting in a sudden and intense passion, but we do not think there was an implicit finding either. In all likelihood the jury ignored the issue of sudden and intense passion because neither party pressed it.

The other issues raised by the appeal do not require discussion.

AFFIRMED.