124 F.3d 205
 80 A.F.T.R.2d 97-5148, 97-2 USTC P 50,565
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
James C. DUNKEL, Defendant-Appellee.
 No. 96-3478.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 25, 1997.*
Decided July 1, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 15, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Western Division, No. 95 C 50296; Philip G. Reinhard, Judge.
 Before CUMMINGS, BAUER, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 In 1995, the United States filed a civil complaint to reduce to a judgment James Dunkel's assessed tax liabilities (allegedly totaling more that $750,000) for 1981 through 1983, and for 1985 through 1993.[1] See 26 U.S.C. § 7401. Dunkel filed a motion to dismiss, to which the United States responded. The government then filed a motion for summary judgment, to which Dunkel responded. The district court denied Dunkel's motion to dismiss and granted summary judgment in favor of the United States in the amount of $787,381.20, plus statutory additions. This appeal followed.
 
 
 2
 Dunkel raises numerous issues on appeal. First, he raises an argument entitled "Subject Matter Jurisdiction." However, we do not understand Dunkel's appellate brief to deny that the federal government's authority to impose income taxes under the Internal Revenue Code arises under the laws of the United States, or to deny that the district court had jurisdiction over this case pursuant to 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340, 1345. Thus, Dunkel's claim is not one of subject matter jurisdiction. See O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1099 (7th Cir.), cert. denied, 512 U.S. 1222 (1994)
 
 
 3
 Rather, it appears that Dunkel is challenging the district court's personal jurisdiction over him. He submitted an "Affidavit in Regard [to] Special Appearance" to the district court, in which he contendedthat the service of process on him was somehow defective. Nonetheless, Dunkel's own affidavit acknowledges that he was served with process personally, and he admitted as much in a hearing before the district court.[2] Dunkel resides in Rockford, Illinois in the Northern District of Illinois, where this action was commenced. Accordingly, the district court validly exercised personal jurisdiction over him. See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); United States v. De Ortiz, 910 F.2d 376, 382-83 (7th Cir.1990). Dunkel contends that he filed a "special appearance" in this case solely to challenge the district court's personal jurisdiction over him, and that he never filed a "general appearance." Whether he appeared "specially" or "generally" is irrelevant, however: This is a federal question case, and the district court acquired valid personal jurisdiction over Dunkel when he properly was served with process. See 28 U.S.C. § 1331; Fed.R.Civ.P. 4(e)(2), 4(k). Dunkel could not thereafter defeat that personal jurisdiction.[3]
 
 
 4
 Dunkel next argues that the district court improperly granted summary judgment in favor of the government because he has already resolved his tax obligation to the government. Dunkel claims that he entered into an installment agreement with the government, whereby he agreed to pay $200.00 per month toward his tax debt. The only evidence of this agreement that Dunkel submitted to the district court was an IRS Form 433-D (Installment Agreement) signed by Dunkel alone; the form is not counter-signed by any IRS agent or official. Dunkel's motions and affidavits to the district court, as well as his brief to this court, contain absolutely no explanation of how or when the government agreed to the terms in the Form 433-D. Without some explanation of why the government should be bound by an agreement it apparently never signed, Dunkel's argument fails to raise a genuine question of material fact adequate to preclude summary judgment. See Slowiak v. Land O'Lakes. Inc., 987 F.2d 1293, 1297 (7th Cir.1993); Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co., 915 F.2d 316, 320 (7th Cir.1990); Valley Liquors Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 659 (7th Cir), cert. denied, 484 U.S. 977 (1987).
 
 
 5
 Relying on Cheek v. United States, 498 U.S. 192 (1991), Dunkel next submits that the district court improperly granted summary judgment in favor of the government because his "sincerely held beliefs" regarding his obligation to pay taxes are at issue in this case. This argument confuses a taxpayer's tax obligations-which exist independent of his beliefs regarding the tax code-with his criminal liability for willfully refusing to pay taxes-which does not. In Cheek, the defendant was convicted of violating 26 U.S.C. § 7201, which prohibits "willful" attempts to evade taxes, and 26 U.S.C. § 7203, which prohibits "willful" failures to file tax returns. Cheek, 498 U.S. at 193-94. The Court in Cheek held that a defendant's sincerely held beliefs-even if irrational-could defeat the "willful" element of § 7201 and § 7203. Id. at 203-04. There is no corresponding intent element to a taxpayer's legal obligation to pay taxes, however; Congress simply imposed that duty. See 26 U.S.C. § 1. Thus, regardless of Dunkel's "sincerely held beliefs" regarding his duty to pay taxes, that duty exists, and the district court need not have considered evidence of Dunkel's beliefs before granting summary judgment. See Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 990 (7th Cir.1993) (fact is material, so as to preclude summary judgment, only if it might affect the outcome of a case under governing law).
 
 
 6
 Next, we come to an argument Dunkel entitles "Collateral Estoppel." In fact, this section of his brief raises arguments of double jeopardy, res judicata, collateral estoppel and the statute of limitations. Addressing first Dunkel's statute of limitations claim: Dunkel argues that 18 U.S.C. § 3282 imposes a five-year statute of limitations on the criminal prosecution of all non-capital offenses, and that the government commenced this action outside that period. Section 3282 is irrelevant to this case, however. That section applies only to criminal prosecutions; this case is a civil action to recover back taxes, interest and penalties. The correct statute of limitations period for this case is ten years after the assessment of a tax liability. See 26 U.S.C. §§ 6501, 6502.[4] In this case, the IRS first assessed Dunkel's tax liability on October 28, 1985. It commenced this action on October 25, 1995-three days before the applicable statute of limitations expired. Accordingly, Dunkel's statute of limitations argument fails.
 
 
 7
 Finally, we turn to Dunkel's double jeopardy argument.[5] As we stated above, see supra note 1, Dunkel was convicted of tax evasion and has served a prison sentence for that crime. Dunkel contends that under the Double Jeopardy Clause of the Fifth Amendment, his conviction and sentence for tax evasion now precludes the government's efforts to enforce a civil judgment against him. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440 (1989). Dunkel contends that this civil suit constitutes a second punishment for the tax offenses for which he has already served a prison sentence.
 
 
 8
 In this case, the government seeks only civil sanctions against Dunkel, rather than criminal penalties. "It is well settled that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.' " United States v. Ursery, 116 S.Ct. 2135, 2149 (1996) (quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)). Nonetheless, "a civil as well as a criminal sanction constitutes punishment [for the purpose of the Double Jeopardy Clause] when the sanction as applied in the individual case serves the goals of punishment." Halper, 490 U.S. at 448. A civil sanction is punishment whenever it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." Id. That is, a civil sanction serves the goal of punishment when it "is not rationally related to the goal of making the [g]overnment whole." Id. at 451. However, in determining whether a civil sanction merely makes the government whole, or instead serves a retributive or deterrent purpose, the government is entitled to "rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." Id. at 446. Thus, to evaluate Dunkel's double jeopardy argument, we would have to determine in this case whether the penalties the government seeks are a form of "rough remedial justice," or instead, are "not rationally related to the goal of making the [g]overnment whole." To do that, we would have to compare the back taxes Dunkel owes to the civil penalties the government seeks. We cannot make that comparison because of a significant problem in this case.
 
 
 9
 As we stated earlier, the government sought summary judgment for the amount of $787,381.20. The district court granted summary judgment in that amount, apparently based on the government's representations that this was the total amount due. The government detailed Dunkel's tax, interest and penalty liabilities for the years 1981-1983 and 1985-1992 in its statement of uncontested facts ("Local Rule 12(M) Statement"). It substantiated these amounts with an affidavit from Marilyn Ganser, an advisor with the Litigation Special Procedures Branch of the IRS. We have listed these amounts in the appendix attached to the end of this order. The annual totals for tax, interest and penalties that we have calculated in the appendix correspond to the totals for each year stated in the government's Local Rule 12(M) Statement and in Ganser's affidavit. But the annual totals do not add up to $787,381; they add up to only $411,198.73.[6]
 
 
 10
 There is no indication anywhere in the record of how the government arrived at the amount of $787,381. The government's Local Rule 12(M) Statement and Ganser's affidavit both state that the $787,381 figure is based on the data in the preceding paragraphs of those documents, respectively.[7] But we have listed these data in the appendix, and they simply do not add up to $787,381. This figure may be accurate; perhaps it is based on some additional tax or penalty. But we cannot ascertain, based on the record before us, how the government arrived at that amount.
 
 
 11
 Because there is no factual basis anywhere in the record for judgment in the amount of $787,381.20, summary judgment for that amount cannot stand. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 795 (7th Cir.1997) (party seeking summary judgment has initial responsibility of informing the district court of the basis for its motion); see also Logan v. Commercial Union Ins. Co., 96 F.3d 971, 979 (7th Cir.1996). Accordingly, we must remand this case to allow the district court to determine the correct amount of taxes, interest and penalties Dunkel owes, and to determine in the first instance whether those penalties are so severe as to constitute a second punishment within the meaning of Halper. Moreover, to allow the district court to make these determinations, the government should indicate for each penalty and interest charge the amount of back taxes on which the penalty or interest is being imposed, the statutory basis for that penalty or interest charge, and the calculation by which the government arrived at the amount of each penalty or interest charge.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 It is not clear from the record whether Dunkel merely underpaid taxes for those years, whether he filed false or evasive tax returns, or whether he failed to file any tax returns at all for those years. Rather, for each year in question, the record indicates only that "a delegate of the Secretary of the Treasury made an assessment according to law ... against James C. Dunkel for unpaid income tax...."
 In any event, Dunkel was convicted in 1989 on criminal charges of tax evasion for the years 1981 through 1983, and this court affirmed his conviction. See United States v. Dunkel, 900 F.2d 105 (7th Cir.1990). The Supreme Court vacated our judgment and remanded the case in light of its decision in Cheek v. United States, 498 U.S. 192 (1991). See Dunkel v. United States, 498 U.S. 1043 (1991). We then reversed Dunkel's conviction and remanded the case for retrial. See United States v. Dunkel, 927 F.2d 955 (7th Cir.1991). Dunkel was again convicted on charges of tax evasion for 1981 through 1983, and we affirmed. United States v. Dunkel, 986 F.2d 1425 (7th Cir.1993) (unpublished order). Dunkel has now completed his sentence for that conviction.
 
 
 [2]
 Dunkel's affidavit stated that "when [he] was served with SUMMONS AND COMPLAINT in [this case] they were handed to him mixed in with a pile of RELEASES OF LEVIES during a visit from IRS [A]gent Nyman." (emphasis in original). Similarly, at a hearing before the district court, Dunkel admitted that he was served with process personally, but contended that the summons and complaint "was kind of slid in there.... I don't think this was done properly." Neither of these facts in any way invalidates the process served on him
 
 
 [3]
 Contained within the section of his brief challenging the district court's jurisdiction, Dunkel raises an argument challenging the validity of the assessment of taxes the IRS made against him. Dunkel asserts that:
 There are no lawful grounds for collection procedures ... by the I.R.S. or the government unless a valid tax assessment has been properly recorded in the I.R.S. district or regional office, and if one is not in the Alcohol, Tobacco or Firearms Industries, there cannot be a "valid" assessment.... If no valid assessment certificate has been filed with the Secretary [of the Treasury], there is no authority for the I.R.S. to continue with collection procedures against appellant. Thus, the summary judgment order must be reversed.
 This argument is a challenge to the legal basis of the government's claim, and not a challenge to the court's jurisdiction. To the extent that Dunkel is attempting to raise an argument separate from his jurisdictional argument, he has failed to support it adequately with "citation to authorities, statutes [or] parts of the record relied on," Fed. R.App. P. 28(a)(6), and accordingly, he has waived it. See Colburn v. Trustees of Indiana University, 973 F.2d 581, 593 (7th Cir.1992) (claims not properly developed are waived); Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs Benefits Review Bd., 957 F.2d 302, 305 (7th Cir.1992) ("[W]e have no obligation to consider an issue that is merely raised on appeal, but not developed in a party's brief."); United States v. Haddon, 927 F.2d 942, 956 (7th Cir.1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").
 
 
 [4]
 Under § 6502(a)(1), the government may initiate court proceedings to collect taxes within ten years of the assessment of a tax liability. Under § 6501(a), the government must make the assessment of tax liability within 3 years after a tax return is filed, except in cases in which a taxpayer files a false or evasive tax return, or files no return at all. See 26 U.S.C. § 6501(c). In such cases, the government may make an assessment of tax liability at any time
 Because Dunkel was convicted of tax evasion for 1981 through 1983, the government could make assessments against Dunkel at any time for those three years. For each of the years 1985 through 1993, the government made an assessment against Dunkel within three years. Thus, regardless of whether Dunkel filed tax returns for those years, the government made timely assessments under § 6501, and it timely commenced this action within ten years under § 6502.
 
 
 [5]
 To the extent that Dunkel raises separate arguments of res judicata and collateral estoppel, we need not address these claims. Double jeopardy is the criminal counterpart to res judicata, and incorporates the concept of collateral estoppel. Kennedy v. Washington, 986 F.2d 1129, 1133 (7th Cir.1993), cert. denied, 510 U.S. 1070 (1994). See also Dowling v. United States, 493 U.S. 342, 347-48 (1990). Thus, our consideration of Dunkel's double jeopardy claim takes into consideration the principles of res judicata and collateral estoppel
 
 
 [6]
 Even our calculation of $411,198 is uncertain. It is not clear whether the government is claiming that Dunkel owes a total of $151,059.52 or $114,313.52 for 1981. (Our sum of $411,198 is based on the assumption that the government is claiming that Dunkel owes $151,059.52 for 1981.) Both Ganser's affidavit and the government's Local Rule 12(M) Statement (which quotes Ganser's affidavit verbatim) list two separate assessments for 1981. Ganser's affidavit states:
 
 
 [3]
 On January 6, 1986, a delegate of the Secretary of the Treasury made an assessment according to law against James C. Dunkel for unpaid income tax for the year 1981, consisting of tax of $36,746.00
 
 
 [4]
 On October 22, 1990, a delegate of the Secretary of the Treasury made an assessment according to law totalling $114,313.52 against James C. Dunkel for unpaid income tax for the year 1981, consisting of $22,763.00 of tax, $4,560.00 of estimated tax penalty, $48,237.38 of negligence penalty, and $38,753.14 of interest
 Thus, it is not clear whether the 1990 assessment for 1981 superseded the 1986 assessment for 1981, so that Dunkel owes $114,313, or whether, instead, the 1990 assessment is an additional assessment, so that Dunkel owes $151,059.52 (the sum of $36,746 and $114,313.52) for 1981. Because, in either case, the figures do not add up to the grand total the government claims Dunkel owes, we have no way of knowing how much the government claims he owes for 1981.
 
 
 [7]
 Ganser's affidavit states:
 Despite notice and demand, James C. Dunkel has refused or neglected to fully pay the assessed liabilities described in paragraphs 3 through 14, and there remains due and owing to the United States with respect thereto, [sic] the sum of $787,381.20 plus interests and other additions accruing from and after March 20, 1996.
 The government's Local Rule 12(M) Statement repeats this language.